IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| **RICKY GIBSON** : <br> 5 Navigator Court <br> Middle River, Maryland 21220, : <br><br> Plaintiff, : <br><br> vs. :    Case No. _____ <br><br> **HVA IMPORTS, LLC** : <br> 200 SW 1ˢᵗ Avenue, 14ᵗʰ Floor <br> Fort Lauderdale, FL 33301 : <br><br> Serve on: : <br>     CSC-Lawyers Incorporating Service Co. <br>     7 St. Paul Street, Suite 820 : <br>     Baltimore, Maryland 21202 <br>     : <br> and <br>     : <br> **AUDI HUNT VALLEY** <br> 9800 York Road : <br> Cockeysville, Maryland 21030 <br>     : <br> Defendants. | |

...oooOooo...

## COMPLAINT

NOW COMES Plaintiff Ricky Gibson, by and through his attorneys, Andrew M. Dansicker, D. H. Andreas Lundstedt and the Law Office of Andrew M. Dansicker, LLC, and hereby files this Complaint against Audi Hunt Valley and HVA Imports, LLC (together "Defendants") for interference and retaliation under the Family and Medical Leave Act ("FMLA"), and in support thereof states the following:

## THE PARTIES

1. Plaintiff Ricky Gibson is a resident of Baltimore County, Maryland, and a former employee of Audi Hunt Valley.

2.     Defendant Audi Hunt Valley operates an Audi dealership in Cockeysville, Maryland and employs more than fifty (50) employees within a seventy-five mile radius of the Audi dealership in Cockeysville, Maryland.

3.     Defendant HVA Imports, LLC, a subsidiary of AutoNation, the largest owner of automobile dealerships in the United States, owns Audi Hunt Valley and operates an Audi dealership in Cockeysville, Maryland and employs more than fifty (50) employees within a seventy-five mile radius of the Audi dealership in Cockeysville, Maryland.

## JURISDICTION AND VENUE

4.     Subject matter jurisdiction is proper in this Court pursuant to 42 U.S.C. § 12101 *et seq.* as the case arises under federal law, the FMLA, 29 U.S.C. § 2611 *et. seq.*, and personal jurisdiction is proper in this Court, because Defendants transact extensive business in Maryland, and the events giving rise to this litigation took place in Maryland.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claim occurred in the District of Maryland, Northern Division.

## FACTS

6.     Mr. Gibson began working for Defendants in February 2018 as a Service Advisor and he always performed his job in a successful manner.

7.     In fact, during his employment with Defendants, Mr. Gibson was repeatedly praised by management for his excellent job performance and unwavering dedication and service to his job, and he earned an Audi Customer Service Achievement Certification (based on his training and service).

8.     At no point was Mr. Gibson ever disciplined or given a negative annual performance review.

9. Between January 2019 and September 2019, Mr. Gibson missed several weeks of work for various medical appointments and surgical procedures relating to medical issues involving his left knee.

10. At all times, Mr. Gibson made sure at least one manager was aware of his medical issues and his need to take time off of work, and he submitted doctor's notes when necessary.

11. In addition, he regularly advised Matrix Absence Management, Inc. ("Matrix"), Defendants' family leave and disability benefits administrator, about his need for days off work for medical appointments and treatment.

12. On September 4, 2019, Mr. Gibson underwent surgery on his left knee and missed approximately four weeks of work while he recovered from the knee surgery.

13. Mr. Gibson regularly advised Matrix of his recovery after his knee surgery, and his medical leave for his knee surgery was covered under the FMLA.

14. During that time frame, Mr. Gibson kept his manager, Frank Basso, informed of his progress, and on September 24, 2019, Mr. Gibson informed Mr. Basso that he had been diagnosed with a torn meniscus (for the second time) and arthritis in his left knee and would need a second surgical procedure.

15. On October 1, 2019, Mr. Gibson returned to work from his knee surgery and attempted to work a full day, but unfortunately, at the end of the day, his knee began swelling and he could not walk, so he contacted his doctor and was instructed to go home and ice his knee, and he was told that they would perform a second surgery on the left knee on October 7, 2019.

16. At that time, Mr. Gibson's direct supervisors, Frank Basso and Tony Palumbo, were not in the office (Mr. Basso was on vacation and Mr. Palumbo was not working that day), so Mr. Gibson informed the Parts Manager, Scott Umberger (who was the acting Service Department

manager while Mr. Basso was on vacation), that he was having difficulty walking and needed to go home to ice his left knee and would be out for the next several weeks for a second surgery and recovery.

17. Mr. Umberger assured him that he would notify the other managers about his absence and told him to go home and rest.

18. Mr. Gibson also sent a text message to Mr. Basso notifying him that he needed to miss work to have another surgery, but Mr. Basso never responded to his text message, and he notified Matrix that he would be having surgery and would be unable to work from October 2, 2019 until he was released to return to work.

19. On October 4, 2019, Matrix sent a letter to Mr. Gibson notifying him that they had received his request for a medical leave of absence starting October 2, 2019 and providing him with paperwork to be filled out to obtain approval of his medical leave under the FMLA.

20. On October 7, 2019 – the same day that he underwent his second surgery – Mr. Gibson received a letter from Audi Hunt Valley, dated October 4, 2019, stating that his employment was terminated because he was no call, no show, *i.e.* he had not informed anybody that he would not be at work on October 2, 3 and 4.

21. Mr. Gibson immediately contacted Mr. Palumbo, who told him that he had been terminated because he did not tell Mr. Basso that he would be out of work.

22. Mr. Gibson explained that he could not have told Mr. Basso that he would be out of work, because Mr. Basso was on vacation when he learned about his need for surgery, so he told the acting Service Department manager, Mr. Umberger.  He also explained that he had sent a text message to Mr. Basso notifying him that he needed surgery, and that he filed a request for medical leave with the FMLA administrator, Matrix Absence Management.

23.     At that point, Mr. Palumbo told Mr. Gibson to contact Human Resources to discuss the matter, and when he did so, he was told that there was nothing that could be done – even though he submitted a doctor's note to Defendants, dated October 2, 2019, showing that he was unable to work from October 2, 2019 until October 7, 2019, when he underwent his knee surgery.

24.     Shortly thereafter, Mr. Gibson received a letter from Matrix, dated October 7, 2020 – the same date that Mr. Gibson learned that his employment was terminated – notifying him that he was eligible for FMLA leave from October 2, 2019 to November 17, 2019.

25.     After Mr. Gibson was terminated, Defendants attempted to block Mr. Gibson from obtaining unemployment benefits, falsely arguing that he was a "no call/no show" on October 2, 3 and 4, 2019.

26.     The Maryland Department of Labor held a hearing on December 20, 2019 regarding Mr. Gibson's eligibility for unemployment benefits, however, and found that Mr. Gibson "did properly notify the employer" that he would not be able to work because of his left knee pain and upcoming surgery, and that his termination was "without justification."

27.     As a result of Defendants' decision to terminate Mr. Gibson's employment and to refuse to allow him to take additional leave under the FMLA for his second surgery, Mr. Gibson suffered lost wages and benefits, as well as emotional distress, including extreme embarrassment and humiliation, anxiety, stress and tension headaches, loss of appetite, depression, diminished self-esteem, and loss of sleep.

## COUNT I

### FMLA – INTERFERENCE/DISCRIMINATION/RETALIATION

28.     Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

29. During all relevant times, Defendants were Mr. Gibson's "employer" or potential employer under the FMLA as they employed fifty or more employees within a 75-mile radius of Mr. Gibson's work site or potential work site during 20 or more calendar work weeks in 2019 and/or 2018.

30. During all relevant times, Mr. Gibson was an "employee" under the FMLA as he worked for Defendants for more than twelve months and for more than 1,250 hours in the twelve months before his employment was terminated.

31. During 2019, Mr. Gibson gave notice of his need for FMLA leave and properly requested time off for medical reasons due to his need for a second surgery on his knee which qualifies as a serious medical condition.

32. Defendants refused to comply with Mr. Gibson's requests, and they ultimately discriminated against him, interfered with his attempt to take FMLA leave and retaliated against Mr. Gibson by terminating his employment rather than allow him time off for his second knee surgery.

33. Such conduct by Defendants constituted interference and/or discrimination and/or retaliation against Mr. Gibson for attempting to exercise his rights by attempting to take FMLA leave and/or for exercising his rights under the FMLA by taking FMLA leave for his first surgical procedure.

34. Such conduct by Defendants was intentional and willful and was expressly predicated on Mr. Gibson's use of FMLA time off and his additional attempts to exercise his rights under the FMLA.

35. As a direct result of Defendants' improper and illegal conduct, Mr. Gibson has suffered substantial financial damages and emotional distress.

WHEREFORE, Plaintiff demands judgment in an amount greater than two-hundred thousand dollars ($200,000.00) against Defendants in compensatory damages, including back pay, front pay, liquidated damages, attorneys' fees, interest, costs, and any and all other relief deemed appropriate by this Court, including but not limited to injunctive relief requiring Defendants to reinstate Mr. Gibson.

Dated: October 29, 2020                                          Respectfully submitted,

                                                                                   /s/
Andrew M. Dansicker (Bar # 11765)
D. H. Andreas Lundstedt (Bar # 28620)
Law Office of Andrew M. Dansicker, LLC
Executive Plaza II, Suite 705
11350 McCormick Road
Hunt Valley, Maryland 21031

adansicker@dansickerlaw.com
andreas.lundstedt@gmail.com

*Counsel for Plaintiff Ricky Gibson*

## **PRAYER FOR JURY TRIAL**

Plaintiff Ricky Gibson hereby requests a jury trial.

_____/s/_____
Andrew M. Dansicker
